Date signed June 17, 2009



WENDELIN I. LIPP
U. S. BANKRUPTCY JUDGE

**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF MARYLAND**
at Greenbelt

| | | |
|---|---|---|
| In re: | : | |
| | : | |
| Alphill C. Rawles, | : | Case No.: 07-23145-WIL |
| | : | Chapter 13 |
|    Debtor. | : | |
| | : | |
| Alphill C. Rawles, | : | |
| | : | |
|    Plaintiff, | : | |
| | : | |
| v. | : | Adversary Proceeding No.: 08-00555 |
| | : | |
| Douglas E. Wych, | : | |
| | : | |
|    Defendant. | : | |

**MEMORANDUM IN SUPPORT OF ORDER AWARDING DAMAGES**

This adversary proceeding was commenced on July 11, 2008, upon the Debtor/Plaintiff's filing of a Complaint Seeking Damages in Core Adversary Proceeding (the "Complaint"). The one-count Complaint alleges that the Defendant violated the automatic stay of 11 U.S.C. § 362(a) by pursuing a post-petition eviction against the Debtor and by "initiating" the towing of the Debtor's vehicles. The Complaint requests actual damages, punitive damages and all reasonable legal fees and expenses incurred by the Debtor in connection with this matter. An Answer to the Complaint was filed on August 11, 2008, and competing motions for summary judgment were

filed by the parties.  On January 8, 2009, this Court held a hearing on the motions for summary judgment and oppositions thereto.  At the conclusion of the hearing, the Court granted the Debtor's Motion for Summary Judgment on the issue of the automatic stay violation.  An Order Awarding Summary Judgment in Favor of the Debtor was entered on January 12, 2009.  A hearing to determine the damages, if any, to be awarded to the Debtor was held on February 20, 2009, and March 30, 2009 (the "Damages Hearing").  The Court has reviewed the pleadings submitted by the parties, listened to the testimony presented at the Damages Hearing, and examined the exhibits admitted into evidence.  For the following reasons, the Court determines that the Debtor shall be awarded attorney's fees in the amount of $3,010.00.

**I.     Background**

On July 14, 2004, the parties executed a land installment contract (the "Land Installment Contract") for the real property located at 724 60th Place, Capitol Heights, Maryland 20743 (the "Property").  Pursuant to the Land Installment Contract, the Debtor agreed to purchase the Property from the Defendant for $200,000.00.  On December 26, 2007, the Debtor filed a Chapter 13 petition (the "Petition Date").  The Certificate of Service filed by the Bankruptcy Noticing System (the "BNC Certificate of Mailing") indicates that the Defendant was served with a copy of the Notice of Chapter 13 Bankruptcy Case, Meeting of Creditors, & Deadlines (the "Notice of Bankruptcy Filing") at 6709 Dower House Road, Upper Marlboro, MD 20772-3806.  It is undisputed that the Defendant received the Notice of Bankruptcy Filing for the Debtor's bankruptcy case.

On January 29, 2008, an Order Dismissing Case for Failure to Complete Required Filings and Notice That Automatic Stay is Terminated was entered in the Debtor's bankruptcy case.  On January 31, 2008, the Debtor filed a Motion to Reconsider Order Dismissing Case for Failure to

Complete Required Filings, which was granted on February 1, 2008, upon the entry of an Order Granting Motion to Reconsider Order Dismissing Case for Failure to Complete Required Filings (the "Order Reinstating Case"). The BNC Certificate of Mailing for the Order Reinstating Case reflects that a copy of the Order Reinstating Case was mailed to the Defendant at 6709 Dower House Road, Upper Marlboro, MD 20772-3806. Although the Defendant denies receiving a copy of the Order Reinstating Case, this Court previously found at the summary judgment hearing that based upon the Requests for Admissions deemed admitted by the Defendant for failure to respond, and the BNC Notice docketed in this case, the Defendant received actual or constructive notice of the reinstatement of the Debtor's case. The Court further notes that the docket reflects that the Defendant was sent a copy of the Debtor's proposed Chapter 13 plan and the Order Confirming Plan entered on April 29, 2008, at the same address.

After the Order Reinstating Case was entered, and without receiving relief from the automatic stay, the Defendant obtained an Order from the Prince George's County Sheriff's Department to evict the Debtor from the Property. On July 10, 2008, the Defendant, with the assistance of the Prince George's County Sheriff's Department, proceeded to evict the Debtor from the Property. Numerous items of personal property were removed from the Property by a crew hired by the Defendant. The Defendant maintains that he initiated the eviction on the mistaken belief that the Debtor's bankruptcy case was dismissed. The Defendant further maintains that shortly after the eviction started, he learned that the Debtor's bankruptcy case had been reinstated. Accordingly, he halted the eviction proceedings, returned the personal property inside the Property, installed new locks on the Property, and left a notice for the Debtor informing him how he could obtain keys to the new locks. Also on July 10, 2008, two of the Debtor's vehicles were towed from the Property.

The Debtor submitted three exhibits into evidence at the Damages Hearing. Exhibit 1, which is entitled "Items Lost," is an itemization of the Debtor's personal property allegedly lost or damaged during the eviction proceeding and/or in connection with the towing of the Debtor's vehicles (the "Personal Property"). Exhibit 1 sets forth a total value of $14,500.00 for the Personal Property. Exhibit 1 was admitted into evidence solely for the purpose of identifying the items claimed to be lost or damaged by the Debtor and not as evidence of the value of the items. Exhibit 2 consists of photocopied pictures of the Personal Property allegedly damaged during the eviction proceedings. Exhibit 3 is an invoice detailing the legal services rendered by Debtor's counsel in connection with this adversary proceeding and the fees charged for those services. Exhibit 3 states that Debtor's counsel spent 36.8 hours in connection with this matter, for a total cost of $12,880.00. Exhibits 2 and 3 were admitted into evidence without objection by the Defendant.

## II.    Standard

11 U.S.C. § 362(k) (formerly § 362(h)) provides, in relevant part:

> (1) Except as provided in paragraph (2), an individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages.

11 U.S.C. § 362. "A violation of the automatic stay is willful if the creditor knew of the automatic stay and intentionally performed the actions that violated the stay." *Ford Motor Credit Co. v. Hemsley (In re Bennett)*, 317 B.R. 313, 316 (Bankr. D. Md. 2004) (*quoting Barnett v. Edwards (In re Edwards)*, 214 B.R. 613, 620 (B.A.P. 9th Cir. 1997)). "The debtor, as the party seeking damages for willful stay violations, has the burden of proving by a preponderance of the evidence that a willful stay violation occurred, that damages were suffered, and that the amount of relief requested is appropriate." *Green Tree Servicing, LLC v. Taylor (In re Taylor)*, 369 B.R.

282, 286 (S.D.W.Va. 2007).  For purposes of Section 362(k), actual damages should be awarded only if there is concrete evidence supporting the award of a definite amount.  *Heghmann v. Indorf (In re Heghmann)*, 316 B.R. 395, 405 (B.A.P. 1st Cir. 2004).  "A damages award cannot be based on mere speculation, guess or conjecture."  *Id.*  An award of punitive damages, on the other hand, usually requires more than a mere willful violation of the automatic stay.  *Id.*  Relevant factors courts consider when determining whether punitive damages should be awarded include: (1) the nature of the creditor's conduct; (2) the creditor's ability to pay damages; (3) the motive of the creditor; and (4) any provocation by the debtor.  *Id.*  An award of punitive damages is often limited to those cases where there is egregious, intentional misconduct.  *Id.*

### III.    Analysis/Damages

This Court has already found that the Defendant willfully violated the automatic stay and summary judgment was granted in the Debtor's favor.[1]  The Court must now determine the amount of damages, if any, to be awarded to the Debtor based on the Defendant's willful stay violation.

### A.    Actual Damages

The Debtor is seeking actual damages in the amount of $14,500.00 for the Personal Property and attorney's fees in the amount of $12,880.00.  A review of the Debtor's bankruptcy

---

[1] The granting of summary judgment was largely based on allegations deemed admitted by the Defendant as a consequence of the Defendant's failure to timely respond to the Debtor's Request for Admissions. Nevertheless, the Defendant has admitted to committing a technical violation of the automatic stay by attempting to evict the Debtor from the Property.  As for the towing of the vehicles, one of the admissions deemed admitted was that the "Defendant initiated the towing of the vehicles."  Absent this admission, there was no evidence that the Defendant caused the vehicles to be towed or had any obligation to stop the towing of the vehicles. In fact, the evidence submitted by the Defendant at the Damages Hearing demonstrated that the vehicles were towed by the Town of Fairmount Heights for violations of the Town's Code of Ordinances, as set forth in a letter from the Town of Fairmount Heights, Code Enforcement Officer (the "Letter").  The Court notes that the Letter, which was admitted into evidence at the Damages Hearing by the Defendant, is dated September 19, 2006, nearly two years before the vehicles were towed.  Despite the coincidental timing of the towing of the vehicles and the eviction, the Debtor failed to prove that the Defendant was responsible for towing the vehicles or that he is entitled to damages.

schedules, however, reflects that the Debtor did not schedule any of the Personal Property or the towed vehicles. This is a significant omission from the Debtor's bankruptcy schedules. The Debtor testified at the Damages Hearing that he did not reside at the Property, but used the Property and the vehicles parked on the Property to store items that he intended to use for a church. If the Personal Property is owned by the Debtor, as he claims in this proceeding, then he was obligated to list the property as assets on his bankruptcy schedules. His failure to do so evidences unclean hands. "The doctrine of 'unclean hands' demands that a plaintiff act fairly in the matter for which he seeks a remedy." *In re Everett,* 364 B.R. 711, 723 (Bankr. D.Ariz. 2007)(A plaintiff "must come into court with clean hands or he will be denied relief, regardless of the merits of his claim."). A court can deny relief under the unclean hands doctrine only where there is a "close nexus between a party's unethical conduct and the transactions on which that party seeks relief." *Republic of Rwanda v. Uwimana (In re Uwimana*), 274 F.3d 806, 810 (4th Cir. 2001). The doctrine of unclean hands may be raised by the Court *sua sponte*. *In re Everett,* 364 B.R. at 723 (*citing Goldstein v. Delgratia Min. Co.,* 176 F.R.D. 454 (S.D.N.Y. 1997)).

      Here, the Debtor either omitted the Personal Property from his schedules because he did not own the Personal Property, did not believe the Personal Property had any value, or he intentionally misled this Court, the Trustee and his creditors. Even if the Debtor inadvertently omitted the Personal Property from his schedules when he filed the case, he has never fulfilled his duty to amend his schedules to include the Personal Property. Under each scenario, there is a close nexus between the Debtor's unethical conduct and the transaction for which he is seeking relief. *In re Uwimana*, 274 F.3d at 810. As such, the Court finds that the Debtor is not entitled to recover any damages for the Personal Property under the doctrine of unclean hands. The Court invokes this doctrine *sua sponte* to prevent the Debtor from reaping the benefits of his

wrongdoing.  *See In re Uwimana*, 274 F.3d at 810; *In re Everett,* 364 B.R. at 723.

Another form of compensatory damages requested by the Debtor is reimbursement of his attorney's fees.  The Debtor seeks to recover all reasonable legal fees and expenses incurred by his counsel in connection with this adversary proceeding.  This Court has found that the automatic stay was violated in this case.  The automatic stay is among the most basic protections afforded a debtor under bankruptcy law and courts must display a certain rigor in reacting to stay violations.  *Colon v. Rivera (In re Colon)*, 265 B.R. 639, 644 (B.A.P. 1st Cir. 2001) (*quoting Soares v. Brockton Credit Union (In re Soares)*, 107 F.3d 969, 975-976 (1st Cir. 1997)).  In balancing the essential role of the Court to enforce violations of the automatic stay with the Debtor's misconduct, the Court finds that some compensatory damages should be awarded under the circumstances of this case.

The Debtor's Exhibit 3 (the "Invoice") reflects that Debtor's counsel spent 36.8 hours in connection with this matter, for a total cost of $12,880.00.  The Court has reviewed the Invoice and makes the following findings: (i) the Debtor could have pursued the stay violations by filing a motion for contempt rather than an adversary proceeding; and (ii) no judicial economy was preserved by the Debtor having filed the motion for summary judgment.  A hearing on damages was a necessary result of granting summary judgment in the Debtor's favor and the Damages Hearing, coupled with the hearing on the Motion for Summary Judgment, increased rather than preserved the time and resources of the parties and the Court.  For these reasons, the Court will award compensatory damages to the Debtor for reasonable attorney's fees incurred for pleading and trial preparation, and for travel to and attendance at the Damages Hearing, for a total of $3,010.00 (8.6 hours at $350.00 per hour).  This figure represents the approximate amount of legal fees that would have been incurred had this matter been brought through a motion rather

than an adversary proceeding and the amount the Court deems reasonable under the circumstances of this case.

### B. Punitive Damages

The Debtor is also seeking punitive damages in an amount to be determined by the Court. As set forth above, relevant factors courts consider when determining whether punitive damages should be awarded include: (1) the nature of the creditor's conduct; (2) the creditor's ability to pay damages; (3) the motive of the creditor; and (4) any provocation by the debtor. *In re Heghmann*, 316 B.R. at 405. Upon consideration of these factors, the Court will not award the Debtor any punitive damages.

The Court determined at the summary judgment hearing that the Defendant received at least constructive notice of the reinstatement of the Debtor's bankruptcy case. Nevertheless, the Defendant testified, and the Debtor did not refute, that the Defendant halted the eviction proceedings and directed that the Personal Property be placed back inside the Property as soon as he was told the case was reinstated. The Defendant also testified that he left instructions at the Property concerning how the Debtor could retrieve the keys to the new locks. The Court finds that the nature of the Defendant's conduct, including his efforts to promptly rectify the violation, does not warrant an award of punitive damages. As for the Defendant's ability to pay damages, no evidence was presented concerning the Defendant's finances or his wherewithal to pay a significant damages award. The Defendant is an individual, not a business. He sold the Property to the Debtor pursuant to a land installment contract, which the Debtor breached. Based upon the record in this case, this factor weighs slightly in the Defendant's favor but is not a deciding factor in the Court's determination. The third and fourth factors, the Defendant's motive and any provocation by the Debtor, were not addressed at the Damages Hearing so they do not affect the

Court's analysis.

On the other hand, the Court finds that the Debtor may have prevented the events complained of by acting more diligently in his bankruptcy case. There is no evidence that the Debtor filed a notice of bankruptcy in the eviction proceeding commenced by the Defendant in the Circuit Court for Prince George's Maryland in February 2008. Moreover, it was the Debtor's failure to file required documents in his bankruptcy case that resulted in the dismissal and subsequent reinstatement of his case that may have caused confusion regarding the status of the case. Finally, and of utmost significance, in balancing the conduct of the parties, the Debtor should not be rewarded with punitive damages considering his unclean hands in failing to schedule significant assets of the bankruptcy estate. The circumstances of this case, including the Defendant's efforts to promptly rectify the stay violation, simply do not support an award of punitive damages.

## IV.    Conclusion

For the reasons set forth herein, the Debtor is awarded damages in the amount of $3,010.00. A separate Order will issue.


cc:     All Parties
        All Counsel
        Chapter 13 Trustee


**END OF MEMORANDUM**